Did the United States Supreme Court decide this morning? Did they? Did they spell my name right? I don't know. They really decided this morning? Decided. What did they say? They reversed us on Resendez. No, Your Honor, I stay up on things, but not that up on things. You'll have to tell me what they said. They said you lose. Well, I know they ordered us to, for supplemental briefing on the question. I'm sorry, I shouldn't have stepped in. If you could identify yourself for the record and get started in the ordinary way. It was my fault. Atmore Baggett for the appellant, Mr. Flores-Sanchez. Okay. And I'm unaware that we both were reversed, weren't we? Yes. Frankly, I haven't seen it. I don't know what it says. Did they wipe out the circuit laws? Is that what they did? Well, we followed an earlier case, which Tom Reveley of the Fifth Circuit was sitting with us, and he said, I concur only because of this. I'm compelled by this case of the Ninth Circuit, which I think was wrongly decided. And Judge Scalia agreed with him. No, I haven't seen that yet. I hope they spelled my name right. That's all I can tell you. Well, let me go on to my second argument. I usually stay up on these things, but not that often. Yeah, no, this one's forgivable. It's all right. It was just this morning. Just this morning. Well, that's timely or untimely, I guess. Your Honor, the other issue, reason this case should be reversed, is that the Speedy Trial Act has two aspects to it. One is the trials must begin within 70 days, but no more, but the defendant has 30 days from the time that he first appears to consider a case and prepare his defenses. And that was not done in this case. The shortly before the trial was to begin, the government superseded or found a new indictment. I'm sorry. Wouldn't you say that was not done? What was not done? Wouldn't you say that was not done? Well, that he was not given 30 days to prepare his defenses to the new charge. No, but you said 30 days from first appearance. First appearance on the new indictment on the charge that he had. Is that what the statute says, from the new indictment? That's what the statute means. It means that the offense is. That's not what it says. Well, his first appearance was 10 months previous. That's what I'm getting at. Yes. But his first appearance on the charge that he went to trial on. You have a case that says first appearance means first appearance from the most recently amended indictment or something like that? Yes. United States v. Harris, 1984. It talks about the indictment on which the defendant ultimately goes to trial. That was the second indictment. And he was arraigned on the very eve of trial. And there's nothing in the record that shows that he had any notice or time to prepare. The government did that, of course, to eliminate his possible defense of constant surveillance, because the agent was watching this particular crossing point. Presumably, at least I'm sure Mr. Sanchez would have said, that the agent had him under constant supervision or constant surveillance, and, therefore, he did not legally or in the legal sense did not enter and could not have been found in the United States. The government cut away his defense by superseding and changing the charge to attempt, which requires ‑‑ which, of course, has nothing to do with constant observation. And it added to new elements, which the government had to prove, which were not in the indictment, namely a mental state of intent to reenter and also the fact of an overt act, something in furtherance of that mental state intending to reenter. And the problem is, under the Speedy Trial Act, that the defendant is entitled to a 30-day period in which to consider his new charge against him. In this case, there is prejudice. I would submit that prejudice is not necessary. But here the defendant had a plea offer right up to the day before trial, up to the final pretrial conference, and had he had time to consider his changed position, that he no longer had a defense, that he's certain to be convicted because his defense was swept away by this change in the new indictment, and to present whatever evidence he might have presented on the two new elements, that's the type of thing that the Speedy Trial Act is trying to prevent. We submit the case that is most on point is Zedner, Z-E-D-N-E-R, in the Supreme Court, where the Supreme Court discusses the Speedy Trial Act, that it is comprehensive, detailed regulation, and Section 3161C and D combined state that the defendant is entitled to go to trial within 70 days of his first appearance, but no other earlier than 30 days. And, of course, here he had just basically one day, just overnight, which was not sufficient time to consider the plea offer which he had, not sufficient time to discuss the matter with his attorney, and the record just doesn't show at what point in time he actually found out about this indictment, but it couldn't have been very much time because  of the delay in his trial. Had there been a motion by the defendant to dismiss the earlier indictment, or did the government do this on its own hook, as it were, recognizing the problems it would have faced under the earlier indictment? Standard procedure in the district. If there's any question about whether someone's observed all the time or not, like a border crossing right there on the border at the fence, they will eliminate the – they will supersede and charge him with the attempt as opposed to the being found in or the entry. So I can't speak for the government, but, yes, there was a motion to dismiss the indictment, page 5 of my excerpt, motion to dismiss the indictment for failure to allege an essential element. But there was not a request for a continuance. We submit there does not need to be a request for a continuance because the statute quite clearly says that unless the defendant consents in writing to the contrary, the trial shall not commence less than 30 days from the date on which the defendant first appears through counsel. And we submit that what – based on the Harris case, what that means is they're talking about his first appearance on the new charge. That's the only significant way to interpret this statute. Just briefly, I'd also like to mention the sentencing issue. Judge Campbell – first of all, the defendant did object on the record to paragraph 24. He said that the petty theft offense was not his offense. It was some other guy who did this. Judge Campbell apparently was confused. He believed that the FBI rap sheet was accurate because the defendant had admitted another offense in the same rap sheet in a plea agreement, but there wasn't any plea agreement. This was a trial. We submit that the defendant is entitled to due process. That's clear error on the part of the sentencing judge. Maybe he misspoke. Maybe he didn't. I know we do have a lot of these 1326 cases. It's very easy to confuse these cases. They're very similar. But he just – the case should be remanded for resentencing, if nothing else, based upon that misperception of the record. And I'd like to just reserve a few minutes for rebuttal. We'll hear from the government, and then you'll have a chance to rebut. May it please the Court. My name is Emery Hurley, appearing on behalf of the United States. Your Honors, the Harris case that is mentioned by Mr. Baggett has been abrogated by Rojas Contreras in the Supreme Court and Carsoboom in this circuit. The clear language of the statute says that the 30-day trial prep clock begins with first appearance through – and we should say first appearance through trial counsel, as opposed to counsel which is appearing for a limited purpose, such as a detention hearing, or their first appearance on the indictment, whichever comes later. In this case, the appearance of actual trial counsel and arraignment on the indictment occurred on the same day, and that was some nine or ten months prior to the day that the case went to trial. Your Honors, the defendant was originally arrested on a complaint which alleged both attempt and entered or found in. He was then indicted originally for entered or found in, and the superseding indictment then went back to the attempted entry into the United States. His trial counsel had been on the case, had received discovery, and had been in a position to begin trial prep for far longer than 30 days. Additionally, the clear language in Rojas Contreras and Carsoboom says that the superseding indictment does not restart the 30-day trial clock, just as it doesn't restart the 70-day trial clock. If, in Carsoboom, the defendant was charged in an eight-count indictment, counts one through seven of that indictment were dismissed for failure to allege a specific victim. The eighth count stood. The defendant demanded an immediate trial on the eighth count, which remained on the  The defendant was then indicted on counts one through seven by adding victim names, and then the superseding indictment also contained a count eight, which was identical to the count eight that was in the original indictment. Then the defendant, some period of time passed, and the government ran past its original 70-day trial clock count, 3 to 7, which were the proved versions of those counts that were in the superseding indictment. It was held that that did not restart the 70-day trial clock. It also certainly doesn't restart the 30-day trial prep clock. If it were to restart, if the circumstances that we have in the case at Bayr restarted the 70-day trial clock and the 30-day trial prep clock because the two were joined together, then what the government could have done is supersede with an indictment which adds the additional count of attempted reentry and then arraign him on the new indictment and then before trial dismiss the very next day, dismiss the entered or found in. That makes no sense. It would not be fair, frankly, for the government to be able to restart its 70-day trial clock simply by filing a superseding indictment. It does not change the amount of time that the defendant had to prepare. It doesn't change the trial clock that the government has to adhere to. The superseding indictment did absolutely nothing to restart those two clocks. The defendant did not make any motion for additional time. He did not ask for a continuance or a recess to address the superseding indictment. He simply went to trial. It was clearly not the issue that the defendant was concerned with. The only issue the defendant was concerned with prior to beginning this trial was the issue of trying to preserve his argument should Almendarez-Torres be overturned sometime in the near future, which it hasn't. As to the judge's misstatement, the judge simply misspoke. The trial judge's statement with regard to the paragraph 24 prior, yes, the judge said it was in the factual basis of the plea agreement. What he should have said was it was a prior that was not contested. Paragraph 22, I should say, is the prior that was not contested by the defense. The paragraph 23 was linked to the defendant by a positive fingerprint match. 22 and 23 were on the same FBI record as paragraph 24. Paragraph 24 was thus found by the judge to belong to the defendant. But it is clear from reading the record as a whole that the judge could not possibly have thought that there was a plea agreement in this case. He was listening to argument about whether paragraphs 23, 24, or 22 belonged to the defendant. When his actual statement, as the judge was determining whether the offense in paragraph 24 has been adequately shown, and this is the sentencing record transcript at page 15, it's the excerpt of record at page 47. And it's the lower half of the page. But the judge says, I base my conclusion on the fact that the petty theft offense, which is paragraph 24, appears on an FBI rap sheet that is based on fingerprint matches with the individual who committed the offense in paragraph 24. Upon the fact that the same FBI rap sheet included, includes the delivery of a controlled substance offense in paragraph 22, which the defendant has admitted occurred in the factual basis of the plea agreement. He shouldn't have said that. He should have said the defendant never contested paragraph 22, which it's clear from the record that he didn't. And the fact that the same rap sheet includes the paragraph 23 offense for possession of a narcotic controlled substance, which has been matched to the defendant by fingerprint analysis. It is a simple misstatement. Viewing the record as a whole, clear and convincing evidence was presented that 22, 23, and paragraph 24 are all attributable to the defendant and were properly included in his guideline analysis. Do we – is it troublesome that the district judge didn't apply the clear and convincing standard, but rather appears to have applied the preponderant standard? Your Honor, from our perspective, it isn't. As we noted in a footnote, the government persists in a belief that the preponderant standard is appropriate after Booker. In this case, and we've cited cases in support of this proposition, although the judge may have misspoken, the record itself, Your Honor, presents clear and convincing evidence that those three priors are attributable to the defendant. The clear and – If the judge applied the wrong standard, if the proper burden of proof standard in this circumstance, because of the increase in sentence that was at stake, was clear and convincing, and the judge didn't apply that, but rather applied preponderance, on what standard do we then review? Do we review the underlying facts and uphold only if the district judge would have been compelled to find clear and convincing evidence? Your Honor, so long as the record supports those three convictions by clear and convincing evidence. Supports in what sense? Supports in that the judge could have found, or supports in that the judge would have been compelled to find? My reading, Your Honor, is that the judge could have found. But that's the standard usually applied when the judge did find. But if the judge didn't find, I don't think we can uphold his decision on a clear and convincing standard if he didn't find it himself without a remand, unless we can find that the evidence would have compelled him to do so. Because if it wouldn't compel him, but he could have found one way or the other, I think we have to ask him. Isn't that right? Your Honor, I – my – again, my reading is that so long as the record supports clear and convincing, even if the judge didn't apply that standard, this Court need not review. We can act as the district judge and be fact-finders in the original instance. That's what you're telling us, I think. I – Your Honor, I think what I'm – what I mean to be telling this Court is that so long as clear and convincing is supported by the record, then the standard has been met. Well, the standard has been met if the district judge has found that it is met by that standard. My – my alternative argument as well, Your Honor, would be that in – on this record, a district judge would be compelled to find by clear and convincing evidence because there is no evidence to the contrary. His finger – he concedes 22, 23 was matched to him by fingerprints, and 24, paragraph – and each time I say that, I mean to paragraph – paragraph 24 was on the same FBI fingerprint-based record as 22, which was conceded, and 23, which was matched by a positive print. I – I would suggest that while I would argue that so long as the record supports clear and convincing, it need not be remanded, I would also argue that this record surely would compel the district judge to have found by clear and convincing that those three priors are attributable to this defendant. Your Honor, if the Court has no other questions for me, I've run out of things to say and would simply ask that the conviction and sentence be affirmed. Your Honor, in support of the speedy trial argument, I wish to make our position clear that we believe the statute says that if there is a new charge, a different charge, that both clocks are restarted, the 30 and the 70 days, the short clock and the long clock both. And in support of that, we cite 3161c2, which says that he's – this trial shall not commence less than 30 days from the date in which he first appears, and then D-1 says that if an indictment – if a charge is dismissed or otherwise dropped, that section C applies. And what's superseding is basically otherwise dropping the first charge and substituting a second distinct charge for the first charge. That's why the clocks start. You have to read C-2 and D-1 together because we believe that where the charge is different, that both clocks start over again. The cited case of Rojas Contreras in the Supreme Court did not change the charge. It changed the date of the prior deportation. The date is not an element of this offense, and it changed it by 10 days from December 7th to 17th or something like that. But it didn't make any substantive change. This is a substantive change, and we believe the issue is whether attempt is a separate and distinct offense from enter and found or whether it is just a different means of committing the same crime. I've submitted in the brief various comments and rulings by this Court that says, in fact, they are separate and distinct offenses, and that would restart both of those clocks. So we submit that based upon the Speedy Trial Act, what happened here is there was a new, distinct, separate charge against the defendant, and he did not have his mandatory 30-day period to prepare and decide what he wanted to do about it. I thank both of you for helpful arguments. The case of United States v. Flores-Sanchez is now submitted for decision. The next case on the calendar, but not the argument calendar, is United States v. Hess. That case has been submitted on the briefs. The next case on the argument calendar is Stephanie Cardona v. Smith's Food and Drug Centers. Thank you.
judges: Goodwin, Tashima, W. Fletcher